# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| IMANE HIKMAT, individually and a/n/f of A.E., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | |
| LEWISVILLE INDEPENDENT SCHOOL DISTRICT; DR. LORI RAPP, Superintendent of Lewisville ISD, in her official capacity; JENNY PROZNIK, Lewisville ISD President, in her official capacity; and JULIE WATTIGNEY, individually, | § § § § § § § § § | Civil Action No. 4:25-cv-466 Judge Mazzant |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are two motions to dismiss and a motion for leave to file an amended complaint (collectively, the "Motions"). Having considered the Motions, the relevant pleadings, and the applicable law, the Court finds as follows:

1. Defendant Julie Wattigney's Second Motion to Dismiss (Dkt. #17) should be **GRANTED**;

2. Defendants Lewisville Independent School District, Dr. Lori Rapp, and Jenny Proznik's Motion to Dismiss Plaintiffs' First Amended Original Complaint (Dkt. #18) should be **GRANTED in part**; and

3. Plaintiffs' Motion for Leave to File Second Amended Complaint (Dkt. #20) should be **DENIED**.

## BACKGROUND

### I.    Factual Background

This case arises out of injuries that a student allegedly sustained at the hands of their teacher (Dkt. #13). The student, A.E., is a physically disabled, non-verbal child with Down

Syndrome and Attention Deficit Hyperactivity Disorder (Dkt. #13 at ¶ 1). At all relevant times, A.E. attended an elementary school in the Lewisville Independent School District ("LISD") (Dkt. #13 at ¶ 1). A.E.'s guardian, Plaintiff Imane Hikmat ("Plaintiff"), brings this lawsuit individually and on behalf of her son (Dkt. #13 at ¶ 9). The following factual background is derived from the allegations raised in Plaintiff's first amended complaint (Dkt. #13 at ¶¶ 1, 14–18).

In short, during the 2023–2024 academic year, A.E. began to manifest negative and violent behaviors, which prompted Plaintiff to take him to behavioral therapy. In April of 2024, Plaintiff reached out to A.E.'s special education teacher, Defendant Julie Wattigney ("Wattigney"), after A.E. was found with soiled undergarments on two occasions, but she did not respond. Finally, A.E.'s bus driver informed Plaintiff that on one occasion, they saw Wattigney refuse to give A.E. water after he requested it.

Plaintiff further contends that a teacher reported to LISD officials that A.E. was being physically and emotionally abused. Plaintiff did not receive this report. However, the report referenced a visual and auditory recording taken on May 7, 2024, of an incident, "in which A.E. was physically and verbally abused" (the "May 7 Incident"). Specifically, Plaintiff contends that, while in class, A.E. and another child pushed a container off a table. A.E. fled and hid in fear. He was chased down. Another teacher held A.E. by the arm for ten minutes without letting him go. Then, Wattigney held onto A.E. for almost thirty-five minutes, restraining his movement and striking A.E. in the face with his own hand. Wattigney also told A.E. that "she cannot hit A.E. but A.E. can hit A.E." LISD no longer employs Wattigney.

## II.    Procedural Background

On May 2, 2025, Plaintiff filed suit against the following Defendants: (1) LISD; (2) Dr. Lori Rapp, Superintendent of LISD, in her official capacity; (3) Jenny Proznik, LISD School Board

President, in her official capacity; and (4) Wattigney, in her individual capacity (Dkt. #1). Defendants moved to dismiss Plaintiff's Original Complaint (Dkt. #8; Dkt. #9). But on August 27, 2025, the Court granted Plaintiff's motion for leave to file an amended complaint (Dkt. #12; Dkt. #16); accordingly, Plaintiff's first amended complaint was deemed filed (Dkt. #13), and Defendants' respective motions to dismiss were denied as moot (Dkt. #8; Dkt. #9; Dkt. #16). In the first amended complaint, the operative complaint, Plaintiff asserts the following claims: (1) violation of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; (2) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq*.; (3) violations of the Fourteenth Amendment under 42 U.S.C. § 1983; and (4) an assault cause of action against Wattigney under Texas law (Dkt. #13 at ¶¶ 20–51).

On September 2, 2025, Wattigney filed her second motion to dismiss, arguing the common law assault claim in the first amended complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) and the Texas Tort Claims Act ("TTCA") (Dkt. #17). Shortly thereafter, on September 10, 2025, LISD, Jenny Proznik ("Proznik"), and Dr. Lori Rapp ("Rapp") (collectively, the "LISD Defendants"), filed their second motion to dismiss under Rule 12(b)(6) arguing the following: (1) the claims against Rapp and Proznik are redundant of the claims against LISD; (2) Plaintiff failed to plead a viable claim under the Rehabilitation Act, the ADA, or for constitutional violations pursuant to § 1983; and (3) Plaintiff cannot recover punitive damages against the LISD Defendants (Dkt. #18). Plaintiff responded to each motion to dismiss (Dkt. #21; Dkt. #23). Defendants respectively replied (Dkt. #22; Dkt. #26).

While the briefing on the motions to dismiss was ongoing, Plaintiff filed her second motion for leave to file a second amended complaint on September 20, 2025 (Dkt. #20). In this proposed

3

second amended complaint, for the first time, Plaintiff raises two constitutional claims against Wattigney under 42 U.S.C. § 1983, and Plaintiff dismisses her claims against Rapp and Proznik (Dkt. #20 at ¶ 6; Dkt. #20-2). Defendants oppose Plaintiffs' second motion for leave, arguing the amendment is futile and fails to cure the deficiencies outlined in Defendants' respective motions to dismiss (Dkt. #24; Dkt. #25). Plaintiff replied to Wattigney (Dkt. #27), and Wattigney filed a sur-reply (Dkt. #28).[1]

All three Motions are now ripe for adjudication.

## LEGAL STANDARD

### I.      Rule 12(b)(6)

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays*

---

[1]    On January 19, 2026, the Court granted the parties' Joint Motion to Stay pending the Court's considerations of the instant motions (Dkt. #30).

*Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Id.* at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## II.    Rule 15(a)

Rule 15(a) provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served. FED. R. CIV. P. 15(a). After a responsive pleading is served, "a party may amend only with the opposing party's written consent or the court's leave." *Id.* Rule 15(a) instructs the court to "freely give leave when

5

justice so requires." *Id.* The rule "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). But leave to amend "is not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). Whether to grant leave to amend "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (citing *Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 210 (5th Cir. 1986)). A district court reviewing a motion to amend pleadings under Rule 15(a) considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## ANALYSIS

Plaintiff's allegations regarding the abuse of her son, A.E., experienced at the hands of his teacher are disturbing. The central question before the Court is whether, taking those allegations as true, Plaintiff states a claim against Wattigney and the LISD Defendants. Ultimately, the law compels dismissal of the claims against Wattigney and some of the claims against the LISD Defendants. Wattigney's motion to dismiss will therefore be granted (Dkt. #17), and the LISD Defendants' motion will be granted in part (Dkt. #18). Furthermore, an amended complaint would be futile and would not remedy the deficiencies prompting dismissal. Therefore, Plaintiff's motion for leave will be denied (Dkt. #20).

I.   **Motions to Dismiss**

A.   **Wattigney**

In her first amended complaint, Plaintiff asserts a state law tort claim against Wattigney in her individual capacity (Dkt. #13 at ¶¶ 50–51). Wattigney refers to this state law claim as assault (Dkt. #17 at p. 2). In her response to Wattigney's motion to dismiss, Plaintiff refers to this claim as an intentional tort and assault, interchangeably (Dk. #21 at p. 5), but then asserts state law claims for "assault and battery" in her proposed second amended complaint (Dkt. #20-2 at ¶¶ 17–20). The exact state law tort claim Plaintiff asserts against Wattigney does not change the Court's analysis, but the Court will refer to it as assault. Ultimately, this Texas tort claim must be dismissed for the reasons outlined below.

Wattigney urges the Court to dismiss Plaintiff's assault claim for three reasons (Dkt. #17). First, Plaintiff's assault claim asserted against Wattigney must be dismissed under the TTCA's election of remedies provision, Texas Civil Practice and Remedies Code § 101.106(f) (Dkt. #17 at pp. 3–9). Second, Plaintiff's assault claim must be dismissed under Rule 12(b)(6) because the factual allegations in her first amended complaint are insufficient to state a claim (Dkt. #17 at pp. 9–12). Third, Plaintiff's assault claim, asserted on behalf of herself, must be dismissed because Plaintiff does not allege Wattigney assaulted Plaintiff, only A.E. (Dkt. #17 at p. 12). The Court need only consider the first argument.

The Court begins by providing the following context to § 101.106(f) of the TTCA:

Historically, "public employees (like agents generally) have always been individually liable for their own torts, even when committed in the course of employment." *Franka v. Velasquez*, 332 S.W.3d 367, 383 (Tex. 2011) (footnote omitted). This meant that they, like anybody else, could be sued in their individual capacities for their tortious acts while at work. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.7 (Tex. 2009). In 2003, however, the Texas legislature altered this common-law scheme when it amended the Texas Tort Claims Act to add Section 101.106(f) of

7

the Texas Civil Practice and Remedies Code. *See Garza v. Harrison*, 574 S.W.3d 389, 399 (Tex. 2019).

*Trice v. Pearland Indep. Sch. Dist.*, No. 3:19-CV-00286, 2020 WL 4369499, *2 (S.D. Tex. July 10, 2020), *report and recommendation adopted*, No. 3:19-CV-00286, 2020 WL 4368058 (S.D. Tex. July 30, 2020).

This 2003 amendment to the "Election of Remedies" provisions of the TTCA limits a plaintiff's right to sue a governmental employee in their individual capacity for a tortious conduct:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's *official capacity only*. On the employee's motion, the *suit against the employee shall be dismissed* unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106(f) (emphasis added).

Under its plain language, "the Court must apply § 101.106(f) when a government employee shows that, at the time the alleged wrongful act or omission occurred: (1) he was an employee of a government unit; (2) his alleged act or omission fell within the scope of his employment; and (3) the suit could have been brought against the government unit under the TTCA." *Morones as next friend of L.A.M. v. Harlingen Consol. Indep. Sch. Dist.*, No. 1:20-CV-050, 2020 WL 6163237, at *8 (S.D. Tex. Oct. 2, 2020) (citing TEX. CIV. PRAC. & REM. CODE § 101.106(f)), *report and recommendation adopted sub nom.*, *Morones a/n/f L.A.M. v. Harlingen Consol. Indep. Sch. Dist.*, No. 1:20-CV-00050, 2020 WL 6161404 (S.D. Tex. Oct. 21, 2020).

Here, at issue is the May 7 Incident, during which Wattigney "made direct physical contact with AE's person" (Dkt. #13 at ¶ 50). Plaintiff does not dispute that, at the time of the May 7 Incident, Wattigney was an employee of LISD, a school district, which is considered a political

8

subdivision of Texas under the TTCA, and thus, a "governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.001(3)(B). Wattigney argues the remaining two elements have been satisfied, entitling her to dismissal of Plaintiff's assault claim against her, in her individual capacity (Dkt. #17 at p. 9). First, Wattigney contends that her alleged conduct fell within the scope of her employment for LISD as A.E.'s teacher (Dkt. #17 at p. 9). Wattigney directs the Court to Plaintiff's first amended complaint, in which Plaintiff alleges, "Wattigney was acting within the course and scope of her employment while supervising A.E." (Dkt. # 13 at ¶ 40).[2] Second, Wattigney argues Plaintiff's assault claim could have been brought against LISD under the TTCA (Dkt. #17 at p. 9). The Court considers each in turn.

First, notwithstanding her pleaded assertion to the contrary under a separate claim, Plaintiff disagrees with Wattigney's assertion that her conduct during the May 7 Incident fell within the scope of her employment. In support of her argument, Plaintiff directs the Court to the Texas Education Agency's February 6, 2025 Notice of Findings, in which the Texas Education Agency made its findings, conclusions, and decisions related to Plaintiff's allegations (Dkt. #21-1). Specifically, Plaintiff argues that because Wattigney's conduct was prohibited by Section 37.0023 of the Texas Education Code, she was not acting within the scope of her employment (Dkt. #21 at p. 7). This is too narrow a view under the TTCA.

The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." TEX. CIV. PRAC. & REM. CODE § 101.001(5). The Texas Supreme Court has stated that the TTCA "calls for an objective

---

[2]  The Court notes that Plaintiff made this allegation when asserting her § 1983 claim for violation of the Fourteenth Amendment against LISD (Dkt. #13 at ¶¶ 37–49).

assessment of whether the employee was doing her job when she committed an alleged tort, not her state of mind when she was doing it." *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017). Indeed, when conducting the scope-of-employment analysis, there is one objective question: "Is there a connection between the employee's job duties and the alleged tortious conduct? The answer may be yes even if the employee performs negligently or is motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to her job responsibilities." *Id.* The Fifth Circuit has stated that intentional torts generally fall "within the scope of one's employment so long as the act is not a deviation from one's job duties." *Wells v. Tex. Tech U.*, No. 24-10518, 2025 WL 673439, at *7 (5th Cir. Mar. 3, 2025), *cert. denied*, 146 S. Ct. 106 (2025) (citing *Fink v. Anderson*, 477 S.W.3d 460, 466–69 (Tex. App—Houston [1st Dist.] 2015, no pet.) ("Conduct that serves any purpose of the employer is within the scope of employment even if the conduct *escalates* beyond that assigned or permitted." (emphasis added))).

Wattigney argues her alleged conduct fell within the general scope of her employment as A.E.'s teacher because "she was doing her job at the time of the alleged tort even if her alleged conduct was negligent, wrong, or 'ill-advised'" (Dkt. # 17 at p. 9). The Court agrees. Specifically, the Court finds that Wattigney's "physical contact with AE's person"—although disturbing, as previously stated—did constitute "conduct within the scope" of her employment (Dkt. #13 at ¶ 50). Wattigney was an LISD teacher seemingly attempting to discipline a student at the time she injured A.E., who had pushed an object off a table and ran away (Dkt. #13 at ¶¶ 14–18; Dkt #21-1 at p. 3). *See Morones*, 2020 WL 6163237, at *8 ("Maintaining discipline falls within the general scope of a teacher's employment in Texas."); *see also Trice*, 2020 WL 4369499, at *4 ("The Individual Defendants' conduct in disciplining J.T. for an alleged dress code violation clearly served

a purpose of Pearland ISD. At most, Plaintiffs' argument concerns an escalation and not a deviation from the Individual Defendants' job duties.").

Having determined that Wattigney satisfied this element—that her alleged conduct fell within the scope of her employment for LISD as A.E.'s teacher—the Court continues with the remaining element: whether Plaintiff's assault claim could have been brought against LISD under the TTCA (Dkt. #17 at p. 9). If so, then § 101.106(f) of the TTCA applies, and the assault claim asserted against Wattigney in her individual capacity must be dismissed.

The Court disagrees with Plaintiff's position that the assault claim asserted against Wattigney could not be brought against LISD because it is an intentional tort (Dkt. #21 at p. 5 ("The TTCA excludes intentional torts."). Specifically, Plaintiff argues "A.E. has not sued LISD for assaulting him. LISD did not assault A.E. Wattigney assaulted A.E." (Dkt. #21 at p. 6). Not so. "[T]he [Texas Supreme] Court has clearly stated that *all* tort theories alleged against a governmental unit are assumed to be under the Tort Claims Act, regardless of whether immunity is waived." *Colin v. Ft. Worth Indep. Sch. Dist.*, No. 4:18-CV-330-A, 2018 WL 4078272, *4 (N.D. Tex. Aug. 27, 2018) (emphasis added) (first citing *Tex. Dep't of Aging and Disability Servs. v. Cannon*, 453 S.W.3d 411, 415 (Tex. 2015); and then citing *Franka*, 332 S.W.3d at 369) (rejecting the argument that an assault claim could not have been brought against Fort Worth Independent School District because it is an intentional tort for which sovereign immunity has not been waived); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) ("Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, *all tort theories* alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be under the Tort Claims Act for purposes of section 101.106."

(emphasis added) (citation modified)). Thus, Plaintiff's assault claim could have been brought against LISD, instead of Wattigney, under the TTCA.

* * *

Because Wattigney has satisfied each element, the Court is bound to apply § 101.106(f) of the TTCA. Accordingly, statutory immunity applies, and Plaintiff's state law tort claim against Wattigney, in her individual capacity, must be dismissed.

## B.    The LISD Defendants

In her operative complaint, the first amended complaint, Plaintiff asserts various claims against the LISD Defendants—violation of Section 504 of the Rehabilitation Act, violation of the ADA, and a § 1983 claim for violations of A.E.'s constitutional rights under the Fourteenth Amendment. The LISD Defendants urge the Court to dismiss these claims for the following reasons: (1) Plaintiff's claims against Rapp and Proznik, in their official capacities, are redundant of the claims against LISD; (2) Plaintiff's allegations fail to state a "failure to keep safe" claim against LISD under Section 504 of the Rehabilitation Act; (3) Plaintiff's allegations fail to support a "failure to accommodate" claim under the ADA; (4) Plaintiff's allegations fail to state a cognizable § 1983 claim under *Monell*; and (5) even if Plaintiff's claims survive, Plaintiff cannot recover punitive damages against the LISD Defendants (Dkt. #18).

Plaintiff's response addresses the pleading requirements under Rule 8(a)(2) and 12(b)(6), but Plaintiff does not otherwise respond to the LISD Defendants' arguments. Instead, Plaintiff concedes that her first amended complaint "is not flawless," and her only substantiative argument is that her first amended complaint "has been superseded" by her *proposed* second amended complaint (Dkt. #23 at p. 2; Dkt. #20-2). Again, not so. At this stage, the operative complaint is

Plaintiff's first amended complaint. Thus, the Court considers the LISD Defendants' arguments below as they relate only to the allegations made in Plaintiff's first amended complaint.

### 1.    Defendants Rapp and Proznik

Rapp and Proznik should be dismissed from this suit. "Where a plaintiff brings claims against both a public officer in his official capacity and the public entity for which he works, the claims 'essentially merge.'" *Gore v. Cedar Hill Indep. Sch. Dist.*, No. 3:15-CV-3963-M-BN, 2016 WL 4597513, at *5 (N.D. Tex. July 26, 2016) (quoting *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000)), *report and recommendation adopted*, No. 3:15-CV-3963-M-BN, 2016 WL 4593515 (N.D. Tex. Sept. 2, 2016). "When this occurs, the court may dismiss the claims against the public official as duplicative." *Id.* (citing *Flores v. Cameron County*, 92 F.3d 258, 261 (5th Cir. 1996)). Plaintiff does not dispute that Rapp and Proznik should be dismissed from this case, and Plaintiff notes that they have been voluntarily dismissed in her *proposed* second amended complaint (Dkt. #23 at p. 1). Accordingly, Plaintiff's federal claims for violations of A.E.'s rights under the Rehabilitation Act, the ADA, and the Fourteenth Amendment asserted against Defendants Lori Rapp and Jenny Proznik should be dismissed.

### 2.    Section 1983 Claim

LISD also seeks dismissal of Plaintiff's § 1983 claim for municipal liability. Plaintiff's first amended complaint alleges that LISD is liable under 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights (Dkt. #13 at ¶¶ 37–49). "Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation modified). Specifically, 42 U.S.C. § 1983 creates a cause of action against a person who, acting under the color of state law, deprives another of a constitutionally or federally protected right, privilege, or immunity. When the statute was originally passed,

municipalities were generally not considered "persons" acting under the color of state law and enjoyed immunity from suit. However, in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipal government could be liable under § 1983 when a municipal's official policy or custom causes a violation of a constitutional right.

As relevant here, school districts constitute as municipal entities. *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (finding that "municipal entities like the school district qualify as "persons" under § 1983 (quoting *Monell*, 436 U.S. at 690)). "But the school district cannot be held liable under § 1983 on a *respondeat superior* theory. Rather, the school district *itself* must have caused the violation." *Id.* (citation modified). "Thus, to state a § 1983 claim against the school district, the amended complaint must allege sufficient factual content to permit the reasonable inference (1) that a constitutional violation occurred and (2) that an 'official policy' attributable to the school district's policymakers (3) 'was the moving force' behind it." *Id.* (first citing *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866–67 (5th Cir. 2012); then citing *Peña v. City of Rio Grande*, 879 F.3d 613, 621 (5th Cir. 2018); and then citing *Groden v. City of Dallas*, 826 F.3d 280, 283–85 (5th Cir. 2016)).

At the outset, whether a constitutional violation occurred is disputed. According to Plaintiff, "LISD deprived A.E. of his rights to life, liberty, and bodily integrity" guaranteed to him by the Due Process Clause of the Fourteenth Amendment (Dkt. #13 at ¶¶ 38–39). Specifically, Plaintiff alleges "Wattigney, while acting under her authority and position as a school teacher for [LISD], deprived A.E. of his constitutional rights by assaulting him" (Dkt. #13 at ¶ 41). LISD argues "there is a wholesale failure by Plaintiff, however, to identify how [LISD] violated A.E.'s

14

rights under the Due Process Clause," and Plaintiff's "due process claims will not suffice to plead a cognizable violation of A.E.'s constitutional rights" (Dkt. #18 at p. 17).

The Court agrees Plaintiff does not have a cognizable claim under the Fourteenth Amendment. As might be readily inferred, the assault that Plaintiff references when making this substantive due process claim against LISD occurred during the May 7 Incident (Dkt. #13 at ¶¶ 16, 41). So, in essence, Plaintiff's claim is that Wattigney deprived A.E. of his rights to life, liberty, and bodily integrity when restraining and striking A.E. with his own hand after he pushed an object off a table and ran away. "It is well-established in this circuit that 'corporal punishment in public schools implicates a constitutionally protected liberty interest' under the Fourteenth Amendment." *T.O. v. Ft. Bend Indep. Sch. Dist.*, 2 F.4th 407, 413–14 (5th Cir. 2021) (quoting *Ingraham v. Wright*, 430 U.S. 651, 672 (1977)). Nevertheless, the Fifth Circuit has "consistently dismissed substantive due process claims when the offending conduct occurred in a disciplinary, pedagogical setting." *Id*.

> The Fifth Circuit has provided the following reasoning for this jurisprudence:
>
> [A]s long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment. This rule was developed in *Ingraham v. Wright* and applied in *Fee v. Herndon*. It recognizes that, while corporal punishment in public schools is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning, when the state provides alternative post-punishment remedies, the state has provided all the process constitutionally due and thus cannot act arbitrarily, a necessary predicate for substantive due process relief.

*Id*. (citation modified).

The Fifth Circuit has provided the following guidance on what conduct constitutes "corporal punishment":

15

> The Supreme Court has defined "corporal punishment" as the use of "reasonable but not excessive force to discipline a child" that a teacher or administrator "reasonably believes to be necessary for the (the child's) proper control, training, or education." We've explained: "At bottom, fairly characterizing an act as corporal punishment depends on whether the school official intended to discipline the student for the purpose of maintaining order and respect or to cause harm to the student for no legitimate pedagogical purpose."

*J.W. v. Paley*, 81 F.4th 440, 452–53 (5th Cir. 2023) (citation modified).

For illustration, in *Fee v. Herndon*, 900 F.2d 804, 805–10 (5th Cir. 1990), the Fifth Circuit denied a substantive due process claim raised by the parents of a special needs student, wherein the parents alleged that their child was beaten so excessively for misbehaving that he was forced to remain in psychiatric rehabilitation for months. In affirming the dismissal of the § 1983 claims asserted against all defendants, the Fifth Circuit reasoned as following: "since Texas has civil and criminal laws in place to proscribe educators from abusing their charges, and further provides adequate post-punishment relief in favor of students, no substantive due process concerns are implicated because no arbitrary state action exists." *Fee*, 900 F.2d at 810.

The Fifth Circuit has "applied *Fee* in cases where, although the offending conduct may not have been traditional 'punishment,' it was intended to assert order or control over a student for a legitimate pedagogical purpose." *J.W.*, 81 F.4th at 453. For example, in *T.O.*, a first-grade student with Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder exhibited "disruptive classroom behavior," and was taken to the hallway by a behavioral aide. 2 F.4th at 412. A teacher who assumed the behavioral aide required assistance "positioned herself between T.O. and the classroom door while he yelled that he wanted to return to class." *Id.* When T.O. tried to push the teacher so he could get into the classroom, the teacher "responded by seizing T.O.'s neck, throwing him to the floor, and holding him in a choke hold for several minutes." *Id.*

16

In *T.O.*, the Fifth Circuit applied *Fee*, explaining, "[t]he facts alleged simply do not suggest that T.O. was the subject of a 'random, malicious, and unprovoked attack,' which would justify deviation from *Fee.*" *Id.* at 415. Specifically, the Fifth Circuit agreed with the District Court's finding that the injuries T.O. allegedly sustained resulted from a disciplinary incident. *Id.* at 412.

As another illustration, the Court considers *Flores v. Sch. Bd. of DeSoto Par.*, in which the Fifth Circuit affirmed the dismissal of the plaintiff's substantive due process claims. 116 F. App'x 504, 506 (5th Cir. 2004) (per curiam) (unpublished). In that case, a teacher accused a special education student of trying to skip detention, an allegation which the student readily denied. *Id.* The student allegedly "questioned" the teacher's order directing the student to eat lunch in the detention room, which angered the teacher. *Id.* The teacher subsequently threatened the student, "threw him against the wall, placed his hands around [the student]'s neck, and began to choke him while threatening further bodily harm." *Id.* The Fifth Circuit ultimately held that plaintiff did not state a substantive due process claim, stating that "[the Fifth Circuit] would never condone the kind of conduct of which [the teacher] is accused, but his alleged actions are properly characterized as corporal punishment." *Id.* at 511. Specifically, the Fifth Circuit reasoned as follows:

> The facts as alleged by plaintiff, however, also show that [the student] was tardy returning to detention and that [the teacher] believed that [the student] had been purposefully delaying or avoiding his return to the detention room. Thus, even if [the student]'s allegations about [the teacher]'s inappropriate, abusive behavior are true, [the teacher]'s acts apparently were meant to punish [the student] and did not constitute a random, malicious, and unprovoked attack.

*Id.*

Unfortunately for Plaintiff, "disciplinary acts—even those that are 'ill-advised,' 'inappropriate,' or 'abusive'—do not give rise to a substantive due process claim if they are undertaken for a disciplinary or pedagogical reason." *Farshid on behalf of E.K. v. Allen Indep. Sch.*

17

*Dist. through Bd. of Trs.*, 688 F. Supp. 3d 391, 401 (E.D. Tex. 2023) (first citing *T.O.*, 2 F.4th at 414; and then citing *Flores*, 116 F. App'x at 510–11), *aff'd*, No. 23-40532, 2024 WL 3082335 (5th Cir. June 21, 2024). Based on similarly disturbing facts in this case, many involving even more egregious conduct, "the Fifth Circuit has uniformly affirmed the dismissal of corporal punishment claims 'when the offending conduct occurred in a disciplinary, pedagogical setting.'" *Id.* (first citing *T.O.*, 2 F.4th at 414; then citing *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 875 (5th Cir. 2000) (concluding that student could not state due process claim when a teacher forced student to perform excessive physical exercise as a punishment for talking during roll call); and then citing *Marquez v. Garnett*, 567 F. App'x 214, 217–18 (5th Cir. 2014) (per curiam) (unpublished) (concluding that disabled student could not state due process claim when a teacher's aide allegedly grabbed, shoved, and kicked student for sliding compact disc across a table during class time)).

As the Court sees it, whether A.E. is a victim of a constitutional violation depends on whether Wattigney's conduct, at this point, can be treated as corporal punishment instead of a "random, malicious, and unprovoked attack." *Flores*, 116 F. App'x at 511. The Court finds that although it does not condone Wattigney's conduct toward A.E., her acts were not random or unprovoked. Indeed, Plaintiff alleges that, while in class, A.E. and another child pushed a container off a table. A.E. ran and hid. He was chased down. Another teacher held A.E. by the arm for ten minutes without letting him go. Following that, Wattigney held onto A.E. for almost thirty-five minutes and then struck A.E. in the face. Wattigney's acts apparently were meant to punish A.E. Although Wattigney's conduct, taken as true, was ill-advised, inappropriate, or even abusive, the Court cannot say that it did *not* serve a "disciplinary or pedagogical purpose." *T.O.*, 2 F.4th at 415.

18

Simply put, the facts as alleged by Plaintiff do not suggest that A.E. was the subject of a "random, malicious, or unprovoked attack," by his teacher, Wattigney. *Flores*, 116 F. App'x at 511.

Based on the foregoing, it seems that well-established Fifth Circuit precedent forecloses Plaintiff's § 1983 claim here. Thus, a further discussion regarding LISD's *Monell* liability is unnecessary. Plaintiff's failure to state a claim for violation of A.E.'s rights under the Due Process Clause of the Fourteenth Amendment—and, thereby, state a constitutional violation—precludes any further *Monell* analysis. *See Reitz v. Woods*, 85 F.4th 780, 795 (5th Cir. 2023) (finding that "[f]urther discussion of *Monell*'s elements, contours, and jurisprudence is unnecessary," where there was no underlying constitutional violation). Accordingly, the § 1983 claim against LISD should be dismissed.

### 3.    Section 504 of the Rehabilitation Act and the ADA

The Court now addresses the federal, statutory claims asserted against LISD. LISD seeks dismissal of Plaintiff's claims that it violated both the Rehabilitation Act and the ADA. "Section 504 [the Rehabilitation Act] is an antidiscrimination statute," *Est. of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 990 (5th Cir. 2014), which "broadly prohibit[s] discrimination against disabled persons in federally assisted programs or activities." *Id.* (internal quotation marks omitted) (quoting *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010)). Specifically, Section 504 mandates that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794.

The ADA is also an anti-discrimination statute, and it is similarly intended "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA extends Section 504 of the Rehabilitation Act by stating that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132.

"Unlike § 1983, a municipal entity may be held vicariously liable for the acts of its employees under the ADA or [Rehabilitation Act]." *Bradyn S. ex rel. Justin S. v. Waxahachie Indep. Sch. Dist.*, No. 3:18-CV-2724-E, 2020 WL 5659401, at *5 (N.D. Tex. Sept. 23, 2020), *aff'd sub nom.*, *B. S. b/n/f Justin S. v. Waxahachie Indep. Sch. Dist.*, No. 22-10443, 2023 WL 2609320 (5th Cir. Mar. 23, 2023); *see also Delano-Pyle v. Victoria County*, 302 F.3d 567, 574–75 (5th Cir. 2002) ("The Fourth, Seventh, Ninth, and Eleventh circuits have all agreed that when a plaintiff asserts a cause of action against an employer-municipality, under either the ADA or the [Rehabilitation Act], the public entity is liable for the vicarious acts of any of its employees as specifically provided by the ADA.").

There are two claims at issue in the first amended complaint that implicate the Rehabilitation Act and the ADA. First, Plaintiff brings a claim for hostile educational environment under § 504 of the Rehabilitation Act; specifically, Plaintiff alleges that LISD "failed to keep A.E. safe from harm, and failed to provide him an environment that was not hostile, such failures as noted above, have, together and separately, contributed to violating his rights under Section 504"

(Dkt. #13 at ¶ 24).[3] Second, Plaintiff asserts a failure-to-accommodate claim under the ADA; specifically, Plaintiff alleges that LISD "failed to correctly accommodate A.E.'s disability or make necessary modifications in his environment, commensurate with his unique and individualized needs, and was denied such benefits of non-disabled students" (Dkt. #13 at ¶ 36). LISD argues both claims fail.[4]

To state a claim for hostile educational environment under § 504 of the Rehabilitation Act, a plaintiff must allege:

> (1) he was an individual with a disability, (2) he was harassed based on his disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment, (4) defendant knew about the harassment, and (5) defendant was deliberately indifferent to the harassment.

*Lance*, 743 F.3d at 996 (citation modified) (applying the Supreme Court's test outlined in *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) to Section 504 claims).

To state a failure-to-accommodate claim against a school district under the ADA, a plaintiff must allege: (1) the student's disability and limitations were known by the school district; (2) the school district failed to make reasonable accommodations for the student's known

---

[3] Plaintiff refers to this claim as a "failure to keep safe" claim (Dkt. #13 at ¶ 24). Because other courts in the Fifth Circuit refer to this type of claim as a "hostile educational environment" claim, the Court will use that term. *See D.M. v. Duncanville Indep. Sch. Dist.*, No. 3:24-CV-00606-N, 2025 WL 50609, *6 (N.D. Tex. Jan. 7, 2025) (collecting cases).

[4] At the end of her first amended complaint, Plaintiff makes the following request for relief: "A judgment in favor of Plaintiffs, as supported by a finding that the Defendant school district violated Section 504 of the Rehabilitation Act of 1973 by *grossly mismanaging* A.E.'s educational plan" (Dkt. #13 at p. 13 (emphasis added)). Plaintiff's only other allegation regarding LISD's mismanagement of A.E.'s education plan is the following: "Defendants' acts and/or omissions show gross misjudgment or bad faith in discriminating against AE solely by reason of his disability" (Dkt. #13 at ¶ 28). Such a claim is not cognizable under § 504 of the Rehabilitation Act. *See Romo v. Spring Branch Indep. Sch. Dist.*, No. CV H-25-0508, 2025 WL 3634355, at *7 (S.D. Tex. Dec. 12, 2025) (finding that the plaintiff's claim for professional bad faith or gross misconduct should be dismissed because a claim described as such does not exist under neither Section 504 nor the ADA). Accordingly, to the extent that Plaintiff asserts a claim for professional bad faith or gross misjudgment or gross mismanagement of an educational plan under the Rehabilitation Act, those claims should be dismissed.

21

limitations; and (3) the failure was intentional. *Harrison v. Klein Indep. Sch. Dist.*, 856 F. App'x 480, 483 (5th Cir. 2021) (per curiam) (unpublished). The Fifth Circuit has provided the following guidance when analyzing this type of claim:

> For a failure-to-accommodate claim specifically, "intentional discrimination requires at least actual knowledge that an accommodation is necessary." The requisite notice comes from the plaintiff's request for an accommodation or from facts establishing that "'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." Notice beyond merely notice of the disability is required because "[t]he ADA [and § 504] do[ ] not require clairvoyance." "[K]nowledge of a disability is different from knowledge of the resulting limitation" and "certainly is different from knowledge of the necessary accommodation." When a disability is mental, rather than physical, the disability, resulting limitations, and necessary reasonable accommodations often are not "open, obvious, and apparent."

*J.W.*, 81 F.4th at 450 (citation modified).

Here, among other elements, the LISD Defendants argue Plaintiff has not alleged LISD was deliberately indifferent to the purported abuse A.E. experienced. Deliberate indifference is a "high bar." *Harrison*, 856 F. App'x at 484 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011)). And to clear that "high bar," a plaintiff must allege the school district's response was "clearly unreasonable in light of the known circumstances." *Id.* (quoting *Davis*, 526 U.S. at 648). Determining what is "clearly unreasonable" is not necessarily a jury question. *Lance*, 743 F.3d at 997. "Instead, '[i]n an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not "clearly unreasonable" as a matter of law.'" *Lance*, 743 F.3d at 995, 997 (quoting *Davis*, 526 U.S. at 649) (applying the Supreme Court's test outlined in *Davis* to Section 504 claims).

In the first amended complaint, Plaintiff broadly alleges that the senior level LISD employees failed to (1) "properly investigate concerns or complaints," (2) "adequately staff, train,

22

or supervise," (3) "regularly monitor," (4) "adhere to and enforce numerous [LISD] policies," and (5) "establish and promote communication between the staff and administration" (Dkt. #13 at ¶ 17). For now, this is sufficient to allege deliberate indifference. Accordingly, after reviewing Plaintiff's first amended complaint and the arguments presented in the briefs, the Court finds that Plaintiff has stated plausible claims for relief under Rule 12(b)(6). Dismissal of Plaintiff's claim for hostile educational environment under § 504 of the Rehabilitation Act and Plaintiff's failure to accommodate claim under the ADA is unwarranted at this stage.

### 4.    Punitive Damages

The LISD Defendants argue Plaintiff may not recover punitive damages against municipalities for a § 1983 claim (Dkt. #18 at 21). Indeed, in the first amended complaint, Plaintiff attempts to do so: "The acts and omissions of [LISD] over the course of many months and their failure to properly supervise the abusive behavior of their staff not only shock the conscience, but satisfy criteria for punitive damages, as contemplated by Section 1983" (Dkt. #13 at ¶ 57).

Having determined that the § 1983 claim against LISD should be dismissed, the final issue in the LISD Defendant's Motion to Dismiss—whether Plaintiff can recover punitive damages against LISD—is moot. However, the Court agrees with the LISD Defendants. "It is well-settled that punitive damages cannot be imposed against municipalities or counties or school districts in a § 1983 lawsuit." *Deshotels v. Village of Pine Prairie*, No. 11-CV-2052, 2012 WL 1712358, at *3 (W.D. La. Apr. 13, 2012) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)), *report and recommendation adopted*, No. 11-CV-2052, 2012 WL 1712549 (W.D. La. May 15, 2012).

## II.    Motion for Leave to File Second Amended Complaint

The Court next turns to Plaintiff's motion for leave (Dkt. #20). For the reasons outlined below, the Court finds that Plaintiff's motion for leave should be denied.

23

In her motion for leave, Plaintiff seeks leave of court to file a second amended complaint, arguing the proposed pleading "adds additional factual detail to the original complaint in response to Defendant's 12(b)(6) motion to dismiss" (Dkt. #20 at p. 2). Plaintiff cites to Rule 15(a) and suggests that Defendant cannot show "prejudice, bad faith, or undue delay" (Dkt. #20 at p. 2). Defendants oppose the motion for leave (Dkt. #24; Dkt. #25). Specifically, Wattigney argues granting leave to amend the complaint would be improper because Plaintiffs' proposed amendments, to assert federal claims against her, are futile (Dkt. #24 at p. 3). In line with Wattigney's opposition, the LISD Defendants argue the amendments are futile and would not survive Rule 12(b)(6) scrutiny (Dkt. #25 at p. 3).[5]

The Court thus continues with its Rule 15(a) analysis. Defendants' responses in opposition to Plaintiff's request for leave do not address all five factors the Court must consider when reviewing this type of motion (Dkt. #24; Dkt. #25). *Smith*, 393 F.3d at 595 (explaining that when reviewing a motion to amend pleadings under Rule 15(a), a court considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment). Instead, Defendants' responses focus solely on two factors—repeated failure to cure deficiencies and futility (Dkt. #24; Dkt. #25). The Court begins with analyzing the purported futility of plaintiff's amendment.

---

[5] Although Plaintiff does not assert any claims against Rapp and Proznik within the proposed second amended complaint, they join LISD to respond in opposition to Plaintiffs' motion for leave to file second amended complaint (Dkt. #25). This has no effect as the Court has already determined Rapp and Proznik should be dismissed from this suit. *See supra* I.B.1.

### A.    Futility

Plaintiff's proposed second amended complaint asserts claims against Wattigney and LISD (Dkt. #20-2 at ¶¶ 9–10). Specifically, Plaintiff asserts the following causes of action: (1) assault and battery under Texas law against Wattigney; (2) Fourth Amendment violation under 42 U.S.C. § 1983 against Wattigney; (3) Fourteenth Amendment violation under 42 U.S.C. § 1983 against Wattigney; (4) Fourteenth Amendment violation under 42 U.S.C. § 1983 against LISD; (5) violation of the ADA against LISD; and (6) violation of § 504 of the Rehabilitation Act against LISD (Dkt. #20-2 at ¶¶ 17–43).

The only new claims Plaintiff asserts are the § 1983 claims against Wattigney for purportedly violating A.E.'s constitutional rights under the Fourth and Fourteenth Amendments (*Compare* #13, *with* Dkt. #20-2). Wattigney argues the amendment would be futile (Dkt #24 at p. 3), and LISD separately argues the amendment is futile and fails to cure the pleading deficiencies as to survive Rule 12(b)(6) scrutiny (Dkt. #25 at p. 3). The Court will first address Wattigney's arguments and then LISD's arguments.

### 1.    Wattigney

Wattigney argues the newly-alleged federal claims against her in the second amended complaint are futile for the following reasons:

> (1) the Fourth Amendment does not provide a direct cause of action for alleged violations but, instead, such claims must be brought pursuant to 42 U.S.C. § 1983; (2) established Fifth Circuit precedent provides that Plaintiffs' Fourth and Fourteenth Amendment claims are unavailable as a matter of law in Texas school discipline cases such as this one; (3) Wattigney has qualified immunity from these federal constitutional claims; and (4) 42 U.S.C. § 1983 cannot be used to sue for Wattigney's alleged violation of the Texas Education Code because Section 1983 only applies to rights under federal statutes, not state statutes.

(Dkt. #24 at ¶ 5).

25

The Court addresses each argument in turn. First, Wattigney argues Plaintiffs' second amended complaint attempts to assert a direct cause of action under the Constitution for her alleged violation of A.E.'s rights under the Fourth Amendment (Dkt. #24 at ¶ 7). The Court disagrees. Plaintiff begins by stating the use of objectively unreasonable force violates the Fourth Amendment (Dkt. #20-2 at ¶ 23). Plaintiff continues and asserts that Wattigney's actions on May 7, 2024 injured A.E. physically and mentally, and Wattigney's use of force was unreasonable (Dkt. #20-2 at ¶ 23). Although not categorically organized, Plaintiff alleges these actions violated A.E.'s rights under the Fourth and Fourteenth Amendments, and Wattigney is, thus, potentially liable to Plaintiff pursuant to 42 U.S.C. § 1983 (Dkt. #20-2 at ¶¶ 22–25). The Court finds Plaintiff is not making a direct claim under a constitutional amendment; instead, she is properly asserting a § 1983 claim against Wattigney for excessive force in violation of the Fourth Amendment. Now, this finding does not necessarily mean the claim survives dismissal.

Wattigney next argues Plaintiffs' Fourth and Fourteenth Amendment claims are unavailable in school discipline cases in Texas as a matter of law. Again, Plaintiff claims "Wattigney violated A.E.'s rights under the Fourth Amendment," including "freedom from unreasonable seizure of their person," "freedom from the use of unreasonable, unnecessary and excessive force," and "freedom from excessive force when the student had done nothing to require the use of force" (Dkt. #20-2 at ¶ 16). Plaintiff further alleges that Wattigney "acting under color of law and acting pursuant to customs and policies of [LISD], deprived A.E. of rights and privileges secured to him by the Fourth and Fourteenth Amendments"; specifically, "[t]he acts and omissions of Defendant Wattigney deprived A.E. of his rights to life, liberty, and bodily integrity guaranteed to him under the United States Constitution" (Dkt. #20-2 at ¶¶ 22, 24).

Wattigney first points to Fifth Circuit precedent stating that students cannot assert substantive due process claims under the Fourteenth Amendment against school officials based on disciplinary or corporal punishment actions (Dkt. #24 at pp. 4–9). Under the facts in this case, as alleged by Plaintiff, this is true. The Court has previously discussed the Fifth Circuit precedent on this claim. *See supra* I.B.3. Accordingly, Plaintiff fails to state a cognizable claim against Wattigney for violation of A.E.'s constitutional rights under the Due Process Clause of the Fourteenth Amendment.

However, regarding Plaintiff's other § 1983 claim against Wattigney, the Fifth Circuit has not conclusively determined whether the use of force by a teacher against a student constitutes a Fourth Amendment seizure. *T.O.*, 2 F.4th at 415, but, the Fifth Circuit has "rejected Fourth Amendment claims brought by a student who was choked by a teacher on the basis that allowing such claims to proceed would 'eviscerate [the Fifth Circuit]'s rule against prohibiting substantive due process claims' stemming from the same injuries." *Id.* (citing *Flores*, 116 F. App'x at 510). Nevertheless, the Fifth Circuit has also noted that the claims of excessive force and unlawful arrest against other school officials "are properly analyzed under the Fourth Amendment." *Id.* (first citing *Keim v. City of El Paso*, 162 F.3d 1159, 1998 WL 792699, at *1, *4 n.4 (5th Cir. 1998) (per curiam) (unpublished); and then citing *Curran v. Aleshire*, 800 F.3d 656, 661 (5th Cir. 2015)). Under this precedent, the Court cannot say that Plaintiffs' Fourth Amendment claim is unavailable in school discipline cases in Texas as a matter of law; thus, it is cognizable. However, again, this does not mean the claim survives.

Indeed, Wattigney next argues Plaintiffs' §1983 claims, if cognizable, are barred by qualified immunity. To establish liability under § 1983, a plaintiff "must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Public officials whose positions entail the exercise of discretion may be protected by the defense of qualified immunity from personal liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts the defense of qualified immunity and has established that the alleged actions were conducted pursuant to the exercise of his discretionary authority, the burden then shifts to the plaintiff to rebut this defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Courts have historically conducted a two-pronged analysis to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, courts must determine whether a "constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). Second, courts must determine whether "the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The Supreme Court instructs district courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Wattigney argues that this cause of action turns on the second prong: whether Plaintiff has pleaded facts indicating that a defendant's actions violated a statutory or constitutional right that was "'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). To answer this question, the Court must first determine whether A.E. had a "clearly established" right under the Fourth Amendment to be free

from unreasonable seizure of their person and free from the use of unreasonable, unnecessary and excessive force.

The Fourth Amendment of the Constitution "extends to seizures by or at the direction of school officials, but whether such a seizure is unreasonable depends on all relevant contextual circumstances." *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079 (5th Cir. 1995) (citing *New Jersey v. T.L.O.,* 469 U.S. 325 (1985)).

In *Hassan*, the Fifth Circuit explained as follows:

> The Supreme Court has recognized the unique backdrop that schools present for the operation of the fourth amendment, specifically noting that the preservation of order and a proper educational environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult. Thus, while school officials are subject to the limitations of the fourth amendment, the reasonableness of seizures must be determined in light of all of the circumstances, with particular attention being paid to whether the seizure was justified at its inception and reasonable in scope.

*Id.*; *see also Flores*, 116 F. App'x at 510 (first citing *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655–56 (1995); and then citing *Hassan*, 55 F.3d at 1079) (rejecting a Fourth Amendment claim brought by a student who was choked by a teacher on the basis that allowing such claims to proceed would "eviscerate this circuit's rule against prohibiting substantive due process claims" stemming from the same injuries).

However, the Fifth Circuit has been inconsistent on whether a Fourth Amendment claim may stand on its own (without a substantive due process claim), finding there to be grounds for constitutional violations when the teacher's non-punitive conduct reasonably should have been known to be unconstitutional. *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305 (5th Cir. 1987). In *Jefferson*, a teacher tied a second-grade student to a chair for two school days as an "instructional

29

technique imposed by school policy." *Id.* at 304. The Fifth Circuit reversed the district court's dismissal of the plaintiff's fourth, fifth, eighth, and fourteenth amendment claims as a matter of law based on qualified immunity. *Id.* at 306. In doing so, the Fifth Circuit reasoned, that even if the teacher's actions were a form of punishment, "it would not necessarily be protected conduct . . . '[c]orporal punishment is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning.'" *Id.* at 305 (quoting *Woodard v. Los Fresnos Indep. Sch. Dist.*, 732 F.2d 1243, 1246 (5th Cir. 1984).

In *T.O.*, the Fifth Circuit acknowledged this "inconsistency" in its caselaw regarding Fourth Amendment claims asserted by students against school officials. 2 F.4th at 415. Again, the teacher in *T.O.* pushed and hit T.O. after exhibiting disruptive classroom behavior. *Id.* at 412. Ultimately, the Fifth Circuit held that it could not say that it was "clearly established," at the time of the incident, that the teacher's actions were illegal under the Fourth Amendment. *Id.* at 415. The Fifth Circuit reasoned that "for more than thirty years, the law of this circuit has clearly protected disciplinary corporal punishment from constitutional scrutiny." *Id.* at 416.

The Court follows this analysis. The Fifth Circuit's inconsistency on whether a Fourth Amendment violation can exist in a disciplinary or pedagogical context displays the difficulty in determining whether the right was "clearly established" when Wattigney held on to A.E. for thirty minutes and proceeded to hit him with his own hand, after he apparently fled in fear of being punished after pushing an object off of a table in his classroom (Dkt. #20-2 at ¶ 13). Furthermore, the Fifth Circuit has found no Fourth Amendment violation where teachers acted punitively by choking a student, paddling one to the point of hospitalization, and forcing another to engage in

30

excessive exercise. *T.O.*, 2 F.4th at 415; *Moore*, 233 F.3d at 873; *Fee*, 900 F.2d at 806. Although the Fifth Circuit has noted that punitive acts can still violate the Fourth Amendment, the conduct at issue here does not reach this level of egregiousness.

In sum, the Court cannot say that it was clearly established, at the time of the incident, that Wattigney's actions at the time of the May 7 Incident, although disturbing, were illegal under the Fourth Amendment. Accordingly, Plaintiff's Fourth Amendment claim against Wattigney under 42 U.S.C. § 1983 is barred by qualified immunity and the proposed amendment would be futile as to this claim.

Finally, Wattigney argues 42 U.S.C. § 1983 cannot be used to sue Wattigney for her purported violation of the Texas Education Code. This is true. See *Albright*, 510 U.S. at 271 (1994) (Section 1983 is a vehicle to "vindicat[e] federal rights," not state rights.).  However, having found that Plaintiff's § 1983 claims would not survive dismissal, the Court finds this argument moot.

\* \* \*

In sum, the Court finds that granting Plaintiff leave to amend their complaint to add § 1983 claims for violations of A.E.'s Fourth and Fourteenth Amendment rights against Wattigney, in her individual capacity, would be futile.

### 2.    LISD

The Court turns to LISD's arguments that leave to amend should be denied, on the basis that Plaintiff's proposed amendments are futile and that Plaintiff has repeatedly failed to cure the deficiencies of their claims. Again, the Court previously allowed Plaintiff to replead (Dkt. #12; Dkt. #16). Plaintiff's first amended complaint was deemed filed (Dkt. #13), and LISD again moved to dismiss. Now, in Plaintiff's proposed second amended complaint, there are no new claims asserted against LISD. However, Plaintiff alleges her amendments "add additional factual detail to

the original complaint in response to Defendant's 12(b)(6) motion to dismiss where Defendants argued that Plaintiffs' pleading did not contain sufficient detail and well-pled facts supporting their causes of action." The Court disagrees. In the proposed second amended complaint, Plaintiff does not materially change the factual allegations except for omitting allegations regarding the senior level LISD officials (*Compare* Dkt. #13 at ¶¶ 14–19, *with* Dkt. #20-2 at ¶¶ 11–13).

Nevertheless, the Court's analysis does not change. All claims against Defendants Rapp and Proznik should be dismissed. *See supra* I.B.1. Further, Plaintiff cannot assert a *Monell* claim against LISD without an underlying constitutional violation. *Littell*, 894 F.3d at 622 (citing *Monell*, 436 U.S. at 658). The Court has already determined that Plaintiff's allegations do not give rise to a substantive due process claim under the Fourteenth Amendment because the Court found that Wattigney's actions, although abusive, were undertaken for a disciplinary or pedagogical reason, and did not constitute a random, malicious, or unprovoked attack. *See supra* I.B.2. Finally, the Court found that Plaintiff's claims for violation of the ADA and § 504 of the Rehabilitation Act should proceed under the facts as alleged in the first amended complaint. *See supra* I.B.3. (Dkt. #20-2 at ¶¶ 17–43). Accordingly, as to LISD, any amendment to the operative complaint would be futile.

### B.    Remaining Rule 15(a) Factors

While Defendants did not fully brief the Court on every factor, the Court finds that the futility of Plaintiff's amendment weighs heavily against granting leave, and the Court finds that that this Rule 15(a) factor is dispositive in denying Plaintiff's motion for leave in this case. Accordingly, the Court finds that Rule 15(a)(2) does not warrant granting Plaintiff leave to amend her Complaint for a second time, and Plaintiff's motion for leave should be denied.

## CONCLUSION

It is therefore **ORDERED** that Defendant Julie Wattigney's Second Motion to Dismiss (Dkt. #17) is hereby **GRANTED**. Accordingly, Plaintiff's state law tort claims against Wattigney are hereby **DISMISSED**.

It is further **ORDERED** that Defendants Lewisville Independent School District, Dr. Lori Rapp, and Jenny Proznik's Motion to Dismiss Plaintiffs' First Amended Original Complaint (Dkt. #18) is hereby **GRANTED in part**. Specifically,

- all claims against Defendants Dr. Lori Rapp and Jenny Proznik are **DISMISSED**; and

- claims for violation of the Due Process Clause of the Fourteenth Amendment under 42 U.S.C. § 1983 against Lewisville Independent School District are **DISMISSED**; and

- claims for violation of § 504 of the Rehabilitation Act and the Americans with Disabilities Act shall proceed.

It is further **ORDERED** that Plaintiffs' Motion for Leave to File Second Amended Complaint (Dkt. #20) is hereby **DENIED**.

It is further **ORDERED** that the parties shall submit a joint proposed amended scheduling order no later than **fourteen (14) days** from the date of this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

 SIGNED this 15th day of July, 2026.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

33